57 F.3d 1078
 75 A.F.T.R.2d 95-2501, 95-2 USTC P 50,331
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Jesse A. RUF; Angela K. RUF, Petitioners-Appellants,
v.
COMMISSIONER INTERNAL REVENUE SERVICE, Respondent-Appellee.
LUMBER CITY CORP., Successor in interest to Neiman-Reed
Lumber & Supply Company, Inc., Petitioner-Appellant,
v.
COMMISSIONER INTERNAL REVENUE SERVICE, Respondent-Appellee.
 Nos. 93-70811, 93-70812.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted April 5, 1995.
Decided May 26, 1995.
 
 1
 Before: D.W. NELSON and CANBY, Circuit Judges, and TANNER,* District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 Jesse Ruf appeals the Tax Court's determination that he is liable for additions to tax for negligence and for substantial under-reporting of income under sections 6653(a) and 6661, respectively, of the tax code. Ruf's business, Lumber City Corporation, also appeals the Tax Court's disallowance of its deductions for "consultant fees" to shareholders, and the consequential additions to its tax for negligence and substantial under-reporting. We affirm.
 
 
 4
 Because the parties are familiar with the facts of the case, we need not recite them here. We review the Tax Court's decisions on the same basis as decisions in civil bench trials in the United States District Court. Ball, Ball & Brosamer v. Commissioner, 964 F.2d 890, 891 (9th Cir. 1992).
 
 I. Lumber City's Consulting Fee Expenses
 
 5
 Section 162(a)(1) of the Internal Revenue Code permits a corporation to deduct "a reasonable allowance for salaries or other compensation for services personally rendered." For an expenditure to qualify as a deductible expense under section 162(a)(1), it must satisfy a two-pronged requirement: 1) the amount of compensation must be reasonable; and 2) the payment must be purely for services, or have a purely compensatory purpose. Elliotts, Inc. v. Commissioner, 716 F.2d 1241, 1243 (9th Cir. 1983).
 
 
 6
 In this case, the Commissioner has furnished evidence of a non-compensatory intent. She produced a 1982 letter from UBM's chief executive to Neiman-Reed, requesting a review of its "dividend position" and stating that due to UBM's poor cash situation, "a share of the profits from Neiman-Reed is needed." The letter stated that UBM was considering "management charges" to solve the problem.
 
 
 7
 The Commissioner also offered a 1982 letter to Neiman-Reed from its insurance agent and financial advisor. That letter recounted that the level of compensation in Neiman-Reed's consulting agreements with UBM and the Sniders was tied to the amount being paid on life insurance premiums for the other two shareholders, Reed and Neiman. It further demonstrated this relationship by recommending that, in light of Reed's recent death and the commensurate decrease in life insurance expenditures, the consulting fees should be reduced as well.
 
 
 8
 This is precisely the type of evidence that suggests a non-compensatory intent behind payments to shareholders. See Elliotts, 716 F.2d at 1247 n.7. It strongly indicates that the level of compensation for UBM and the Sniders was unrelated to the value of their services to Neiman-Reed. The Tax Court thus did not clearly err in finding that the bulk of the consulting payments was not for a compensatory purpose.
 
 
 9
 We acknowledge Lumber City's argument that some valuable consulting services were given. The burden was on Lumber City, however, to prove both the amount and value of those services, and we agree with the Tax Court that it failed in upholding that burden. Lumber City introduced evidence through its officers and former shareholders that both UBM and the Sniders performed extensive services for Neiman-Reed, such as providing industry expertise and executive labor. The Tax Court correctly held, however, that without any specific evidence of the times or hours the consultants worked, or what similar companies would have paid for similar services, it could not support a finding of a reasonable value for UBS' and the Sniders' services.[1] Neiman's and Snider's general assertions that the services Neiman-Reed received were "a bargain" simply will not suffice to demonstrate their value. The Tax Court's finding thus is not clearly erroneous.
 
 II. Additions to Tax Against Lumber City
 
 10
 We review for clear error the Tax Court's determination of whether an underpayment is attributable to negligence. Wolf v. Commissioner, 4 F.3d 709, 715 (9th Cir. 1993). Once an underpayment of taxes is established, the Commissioner's determination that the underpayment was due to negligence is presumptively correct and must stand unless Lumber City can establish that it was not negligent. Hall v. Commissioner, 729 F.2d 632, 635 (9th Cir. 1984). Lumber City fails to introduce any evidence of its exercise of due care, and argues only that it acted in a reasonable and prudent manner in determining the amount of payments to UBM and the Sniders. This offer is insufficient to overcome the presumption of negligence, and the Tax Court did not err in ordering the negligence additions against Lumber City under 26 U.S.C. Sec.6653(a).
 
 
 11
 Likewise, the Tax Court correctly ordered additions for substantial understatement of income tax. Had Lumber City demonstrated that it relied upon substantial authority for its tax treatment of the consulting fees, the Tax Court would have been bound to hold section 6661 inapplicable. Lumber City offers only its bald assertions that substantial authority for such treatment exists. We affirm the Tax Court's finding that Lumber City is liable for additions to tax under both sections 6653 and 6661.
 
 III. Additions to Tax Against Ruf
 
 12
 Ruf argues that he should not be held liable for negligence penalties because he hired a Certified Public Accountant to prepare his taxes and relied on the advice of a tax attorney and Touche-Ross auditors in characterizing his business transactions. In some situations, a taxpayer may avoid negligence penalties if he has 1) furnished all relevant information to the tax preparer; and 2) relied on that person's professional advice as to the proper tax treatment. The burden lies with Ruf, however, to prove that he has satisfied both of the above requirements. The Tax Court correctly found that he had not done so.
 
 
 13
 Ruf failed to show that he or his tax advisors ever treated the money he received in 1987 from Neiman-Reed as a loan. No loan documents were prepared for the transaction, either before or after the fact. The Tax Court did not clearly err in determining that Ruf was liable for negligence additions.
 
 
 14
 Finally, Ruf presents no neutral information supporting his assessment of the value of the Van Nuys property. Without showing reliance on such information, he cannot demonstrate reasonable cause for the understatements. Thus the Tax Court correctly concluded that Ruf failed to make a good faith effort to determine his actual tax liability.
 
 
 15
 We affirm the Tax Court's order of negligence and understatement additions against Ruf.
 
 
 16
 AFFIRMED.
 
 
 
 *
 Honorable Jack E. Tanner, Senior United States District Judge for the Western District of Washington, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir. R. 36-3
 
 
 [1]
 For example, the record clearly demonstrates that UBM loaned an executive, one Munro, to Neiman-Reed for an extended period, and that Neiman-Reed compensated UBM under a separate consulting agreement for Munro's services at a rate of $60,000 per year. Lumber City, however, failed even to offer evidence of Munro's UBM salary to prove the comparable worth of his services. Under these circumstances, Lumber City has not proven that the $60,000 payment was reasonable compensation